OPINION. Black, Judge: As set out in our opening statement, the principal issue left for our consideration is whether the transfers by the decedent of the capital stock of Hofford Co. and the purchase of the annuity contract for the benefit of his wife were transfers includible in the decedent’s gross estate under section 811 (c) of the Internal Revenue Code. The material provisions of this section are set forth in the margin.[1] Under these provisions any transfer made by a decedent during his lifetime is includible in his gross estate if it falls within any one of the three classifications specified, namely, (1) transfers made in contemplation of death; (2) transfers made with the intention of taking effect in possession or enjoyment at or after the death of the decedent; or (8) transfers made where the decedent retained for his life or other designated period the possession or enjoyment of, or the right to the income from, the property transferred. Do the transfers in question fall within any one of these three classifications? We shall first consider whether the transfers in question, including the annuity contract payable to decedent’s wife, were made in contemplation of death. The leading case on the meaning of the words “in contemplation of death” is United States v. Wells, 283 U. S. 102. Under this decision it is the “dominant motive of the donor in the light of his bodily and mental condition” that controls. The question is one of ultimate fact, arrived at after carefully scrutinizing all the circumstances. These circumstances or evidentiary facts are set out in our findings. We think they show that the decedent’s dominant motive in making the transfers in trust for the benefit of his daughter and grandchildren was to induce Smith to associate again with him in the management of the business of Hofford Co. and to remove the cause of the strained relationship between the two families by satisfying Smith’s demands for immediate performance of the promises previously made to him by the decedent; and that the decedent’s dominant motive in making the transfer in trust for the benefit of his wife and in purchasing the annuity contract for her was to make some provision for his wife at that time because of the gifts he was then making for the benefit of his daughter and grandchildren. At the time this annuity was purchased and the transfers were made the decedent’s health was very good. He had always enjoyed good health until about a year and a half before his death. At the time of the gifts in question he was actually engaged in managing the Hofford Co. Due to the resignation of a valuable employee, the decedent was very anxious to secure again the services of Smith. He saw he could not do this unless he made the transfers in question, so he made them. These were matters associated with life rather than with death. Under such circumstances it can not truthfully be said that the gifts in question were testamentary in character. The respondent places considerable emphasis on the circumstance that the lawyer who drew up the trust instruments also at the same time drafted a will for the decedent’s consideration. In a different setting such a circumstance might weigh heavily on the side of showing a testamentary frame of mind on the part of the donor. Cf. Igleheart v. Commissioner, 77 Fed. (2d) 704; Purvin v. Commissioner, 96 Fed. (2d) 929; certiorari denied, 305 U. ¡3. 626. In the instant proceeding we do not think the drafting of the proposed will for consideration at the time the other instruments were executed carries the weight contended for by the respondent. The decedent did not execute his will until May 31, 1938, which was more than five months after the trust agreements were executed. We think the desire of the decedent to secure the services of Smith and to bring the two families closer together, coupled with the decedent’s good health, are circumstances which outweigh the mere drafting of the will for decedent’s consideration. Cf. Colorado National Bank of Denver v. Commissioner, 305 U. S. 23; Real Estate Land Title & Trust Co. v. McCaughn, 79 Fed. (2d) 602. The respondent has requested us to find as a fact that the transfers of the stock of the Hofford Co. to the trusts were to prevent decedent’s second wife from obtaining .control of the Hofford Co. should she survive her husband and take against his will. We have not made this requested finding for the reason that we do not think the evidence shows such to be a fact. For the reasons above given, we hold that the transfers in question were not made in contemplation of death. We shall next consider whether the transfers in question, including the annuity contract payable to decedent’s wife, fall within either of the above mentioned classifications (2) or (3), or both. The respondent contends that the circumstances in Estate of Pamelia D. Holland, 47 B. T. A. 807, and 1 T. C. 564, are “quite similar to those, involved in the instant case” and that in any event the transfers, including the annuity, are includible in the decedent’s gross estate within the doctrine of Helvering v. Hallock, 309 U. S. 106, on the ground that the decedent had some kind of a remainder interest in the annuity contract and a possibility of reverter in the trusts. It is our opinion that the stock transfers are not includible in the decedent’s gross estate within the doctrine of the Hallock case. The possibility that any of those transfers in trust would ever revert to the decedent or to his estate, assuming that they were complete when made, is so remote as to make that doctrine inapplicable. See Commissioner v. Kellogg, 119 Fed. (2d) 54; Lloyd v. Commissioner, 141 Fed. (2d) 758. We do not mean to say, however, that the stock transfers may not be includible in the decedent’s gross estate under some other doctrine. In Estate of Pamelia D. Holland, supra, the decedent and her husband on June 24,1920, entered into a contract with their five children wherein the parents “sold” to the children for a nominal consideration of one dollar all the stock of a corporation. The contract further provided that the father was to be paid a salary of $25,000 per year for as long as he should live and, should he predecease his wife, then she was to be paid a similar salary for as long as she lived. The father did predecease the mother and, in holding that the stock so “sold” was includible in the mother’s gross estate when she died to the extent of her interest therein, we said in part: True, this payment was denominated “salary” and was not specified as company profits or dividends on the shares. But no services were or could he required in exchange. And at petitioner’s request, we have found the value of the company’s capital and surplus at that time to have been $125,000. The annual payment would thus approximate a return of 20 percent on the investment. In the absence of evidence of prior earnings in excess of that figure, and there is none, we can not regard it as reasonable that the parties would expect the property to produce a higher average return. * * * Hence, without yielding completely to terminology, and viewing the transaction in its essential reality, the income to be expected from the stock was in effect retained by decedent during her life. * * * Although our ultimate decision in the Holland case was grounded upon the doctrine of the Hallock case rather than the retention of income theory, this was so, in part at least, because of the fact that the transfers in the Holland case occurred in 1920, which was prior to the adoption of the Joint Resolution of Congress on March 3,1931, and so the retention of income theory could not prevail in the face of May v. Heiner, 281 U. S. 238; Hassett v. Welch, 303 U. S. 303; and Estate of Edward E. Bradley, 1 T. C. 518; affirmed by the United States Circuit Court of Appeals for the Second Circuit under mandate dated January 31, 1944. The stock transfers in the instant proceeding occurred after March 3, 1931, and are therefore not controlled by the last cited cases. The decedent in the instant case was to be paid a salary by the Hofford Co. of $15,000 per year, “regardless of whether or not he shall at any time or times be incapacitated by illness or otherwise from performing his duties” under the agreement of December 28, 1937. This salary was to continue as long as the decedent lived, unless he himself terminated the agreement which he did not do. As we understand this agreement, if in the next year after its execution decedent had become incapacitated by illness and had remained an invalid for several years, he would have continued to draw his salary of $15,000 per annum. The parties have stipulated that the 2,000 shares of stock in question had a value of $75 per share on the date ■of decedent’s death. The salary represented a 10 percent return on such a valuation. Although Hofford Co. earned a net income after •deducting the salary paid the decedent in the years 1938 and 1939, it sustained a loss of over $18,000 in 1940. It paid no dividends between the date of the transfers and the date of the decedent’s death. The decedent under the contract of employment was to exercise the sole management of the corporation’s affairs. The trust agreements all provided “that no stock of W. F. Hofford, Inc., shall be sold or otherwise disposed of during the lifetime of Settlor without his written consent.” We think all of these circumstances when taken together fall within the ambit of Estate of Pamelia D. Holland, supra, and require us to hold that the stock transfers fall within the meaning of the above mentioned classifications (2) and (3), and the stock is includible in the decedent’s gross estate. The value at which the stock is to be so included is $150,000. Regarding the annuity, the insurance company, for a cash premium of $25,000 paid by the decedent, agreed to pay a life annuity of $98 monthly to Cora L. Hofford, the annuitant, beginning on December 19, 1937. The payment of this annuity to Cora L. Hofford is unconditional so long as she may live. The annuity agreement also provides: The Company also agrees that If the total of such annuity payments shall be less than the single premium received, then, after the death of the Annuitant, like payments shall be made until the total amount of all payments shall equal the said single premium (the final payment not to exceed the then unpaid remainder of said single premium), such remaining payments to be made to the beneficiary, William F. Hofford, husband of the Annuitant, if he be living, if not, to Harry Spangler, nephew of said William F. Hofford, if he be living (subject to the rights of the Annuitant as hereinafter reserved to change any beneficiary). ******* Change of Beneficiary. Subject to the rights of his assignee, if any, the Annuitant may at any time change any beneficiary by filing written notice thereof at the Home Office of the Company on its form therefor, accompanied by the contract for suitable endorsement by the Company, such change, when so endorsed, to the effective as of the date of execution of such notice by the Annuitant. The respondent determined and contends that the entire cost of the annuity in the amount of $25,000 is includible in the decedent’s gross estate within the purview of section 811 (c), sufra. We have already held that the purchase of this annuity by the decedent was not made in contemplation of death. The annuity took full effect at once and was not conditioned in any way upon the decedent’s death. The only possible interest in this annuity retained by the decedent was that if the annuitant should die before decedent, without having received a total amount equal to $25,000 and without having changed the beneficiary, then the decedent would receive $98 monthly until the total amounts paid the annuitant and the decedent equaled $25,000. As we have already stated, respondent contends in the first place that this $25,000 which decedent expended in the purchase of an annuity for his wife was a gift made in contemplation of death, was testamentary in character, and, therefore, should be included in decedent’s estate. Of course, if we had sustained respondent’s contention in this respect the $25,000 would be included as a part of decedent’s estate. But, for reasons already stated, we have rejected that contention. Bespondent submits in the next place, if we reject his contention that the transfers, including the purchase of the annuity, were made in contemplation of death, that the $25,000 expended in the purchase of the annuity by decedent should nevertheless be included in his estate because it was intended “to take effect in possession or enjoyment at or after death within the doctrine of Helvering v. Hallock, 309 U. S. 106.” We do not think this contention can be sustained. In the group of cases decided on the same day by the Supreme Court of which the HallocJc case was one, the Court pointed out that “All involve dispositions of property by way of trust in which the settlement provides for return or reversion of the corpus to the donor upon a contingency terminable at his death.” In the instant case there was no transfer in trust by decedent of the $25,000 which he used to purchase an annuity for his wife. He purchased the annuity and gave it to her outright and returned the full $25,000 for gift tax purposes on his gift tax return for 1937. At her attained age when the annuity was purchased, she had a life expectancy of 23.81 years. If she lives out this life expectancy, the annuity will not only exhaust the interest, but the principal of the fund. Decedent had no interest in the annuity contract unless Cora L. Hofford should die before the total aggregate payments to her amounted to $25,000, which was the amount of the single premium which had been paid for the policy. At decedent’s death Cora was still living and drawing the annuity provided by the contract and there is no reason to expect that she will not live out the full measure of her expectancy based upon the American Annuitants Mortality Table, which was used in the writing of the contract. Her interest in the annuity was not enlarged in any manner whatsoever by reason of decedent’s death. The situation in the instant case is entirely unlike that which was present in Estate of William Walker, 4 T. C. 390. In the latter case the income beneficiaries for life of an inter vivos trust which decedent had in a prior year executed were his two grandsons. Upon the death of both of them without issue or the execution of a limited power of appointment, the corpus of the trust was to revert to the settlor, William Walker, or was to go to whomever he might designate by will. In his determination of a deficiency in estate tax in that case the Commissioner recognized that the gift of the life estates to the settlor’s two grandsons was irrevocable and complete, and he computed the value of the two life estates and subtracted that value from the total value of the corpus and included in decedent’s gross estate only the remainder, which was $30,624.95. We sustained the Commissioner in including this remainder interest in decedent’s gross estate under the principle of Helvemng v. Hallock, supra. Manifestly applying the same rationale, nothing is to be included in the instant case in decedent’s gross estate on account of any remainder interest which decedent possessed in the annuity policy which he gave his wife. Cora L. Hofford was not only the income recipient of the annuity policy, but also the recipient from year to year of part of the principal, and at the end of her life expectancy nothing will be left for anyone, either principal or interest. Therefore, when the value of the life estate of Cora L. Hofford in the annuity policy is deducted, there is no remainder to be included in decedent’s estate. Thus in this very important respect the instant case is entirely different from Estate of William Walker, supra. It should also be remembered, in considering whether anything should be included in decedent’s estate on account of this purchase of annuity for his wife at a cost of $25,000, that decedent had no power whatever to impair or diminish Cora L. Hofford’s interest in the annuity. Under the terms of the annuity policy she had the power at any time she chose to remove decedent as the beneficiary of the remainder interest should she die before the collection of the full $25,000 and to substitute another beneficiary, but he had no power to alter or change her interest. That was irrevocably fixed when the annuity policy was written. Therefore, because of the foregoing reasons, we reject respondent’s contention that the $25,000 expended in 1937 by decedent in the purchase of his wife’s annuity should be included in his gross estate under section 811 (c) because of Helvering v. Hallock, supra. Did the respondent err in disallowing $571.50 claimed as one of the “Debts of Decedent” in schedule K of the estate tax return ? The applicable statute is section 812 (b) (3) of the Internal Revenue Code.[2] In his deficiency notice the respondent disallowed the item, “in the absence of proof that it was contracted for adequate and full consideration in money or money’s worth.” It is not necessary that the consideration referred to in the statute be received by the decedent. Porter v. Commissioner, 60 Fed. (2d) 673; Dodge v. Gagne, 28 Fed. Supp. 729; Old Colony Trust Co., Executor, 39 B. T. A. 871, 879. In the instant proceeding the decedent endorsed a note for the Lehighton Legion Home Association. The money received by the latter was used to buy uniforms for its members. The association was clearly debtor for borrowed money on the note which it executed. The testimony is that the association paid some interest on the note to the bank, but never paid anything on the principal. There is no evidence that the decedent intended any gift to the association by his accommodation endorsement and there is no reason to suppose that he intended any gift. After the decedent’s exécutors paid the note, they made a demand on the association for repayment, but it was without funds and the note was then uncollectible. We hold that the respondent erred in disallowing the item as a deduction from the gross estate under section 812 (b) (3), supra. Old Colony Trust Co., Executor, supra. Decision will be entered under Rule 50. SEC. 811. GROSS ESTATE. The value of the gross estate of the decedent shall be determined by Including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States — • ******* (c) Transfers in Contemplation op, or Taking Effect at Death. — To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or * * * except in case of a bona fide sale for an adequate and full consideration in money or money’s worth. SEC. 812. NET ESTATE. For the purpose of the tax the value of the net estate shall be determined, In the case of a citizen or resident of the United States by deducting from the value of the gross estate— ******* (b) Expenses, Losses, Indebtedness and Taxes. — Such amounts— ******* (3) for claims against the estate, ******* * * * The deduction herein allowed in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money’s worth. * * *