HILL, *J.*, agrees with the above.

ESTATE OF WILLIAM F. HOFFORD, DECEASED, MARKLE BANKING AND TRUST COMPANY, A CORPORATION, AND DONALD V. SMITH, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1845. Promulgated February 19, 1945.

*Joseph J. Brown, Esq.,* for the petitioners.
*Paul E. Waring, Esq.,* for the respondent.

SUPPLEMENTAL OPINION.

BLACK, *Judge*: On January 8, 1945, this Court promulgated findings of fact and opinion in this proceeding and directed that decision be entered under Rule 50. See *Estate of William F. Hofford*, 4 T. C. 542. No decision has as yet been entered under Rule 50.

On January 24, 1945, within the 30-day period prescribed by Rule 19 of our Rules of Practice, petitioners, as executors of decedent's estate, filed a motion for reconsideration. The gist of petitioners' motion is that there is no factual support for the Tax Court's decision that (a) the stock transfers in controversy were intended to take effect in possession or enjoyment after decedent's death and (b) that decedent retained the possession or enjoyment of, or the right of the income from, the stock transferred. The principal contention of respondent at the hearing and the issue to which most of the oral testimony was directed were that the transfers in controversy were

made in contemplation of death. In our report promulgated January 8, 1945, we decided against respondent on that issue.

In addition to his contention that the transfers in controversy were made in contemplation of death, the Commissioner contended as further grounds for including the value of the property transferred in decedent's gross estate: (1) The transfers were made with the intention of taking effect in possession or enjoyment at or after the death of decedent, and (2) the decedent retained for his life the possession or enjoyment of, or the right to the income from, the property transferred.

In the consideration of these grounds we held against the Commissioner as to $25,000 expended in the purchase of an annuity by the decedent for his wife, Cora L. Hofford. We held in favor of the Commissioner as to 2,000 shares of stock of the Hofford Co. transferred by decedent to six trusts created by him under date of December 28, 1937. The ground upon which we based our inclusion in decedent's estate of the value of the property transferred to these six trusts was that by means of a contract of employment between the Hofford Co. and decedent entered into December 28, 1937, the same date as the trust indentures were executed, decedent in effect reserved to himself for life the income from the shares of stock, thus bringing the value of the property into decedent's estate under the provisions of section 811 (c), Internal Revenue Code. The details of this contract of employment were incorporated in our findings of fact and need not be repeated here. In reaching our decision that the value of the property should be included in decedent's estate under section 811 (c) because of this contract, we relied principally upon *Estate of Pamelia D. Holland*, 47 B. T. A. 807, and 1 T. C. 564.

In the *Holland* case it was decided that (a) the income to be expected from the stock there transferred was in effect retained by decedent and (b) because of such retention, coupled with decedent's reservation of other interests in the stock, the transfer did not take effect in possession or enjoyment until decedent's death.

The petitioners contend that the *Holland* case is distinguishable from the instant case for substantially the following reasons: In the *Holland* case the transaction there in controversy involved the alleged sale by decedent and her husband to their children of the entire outstanding stock of the corporation. Under the contract of sale dated June 24, 1920, it was stipulated that upon the death of her husband decedent should receive from the corporation an annual salary of $25,000 during her lifetime, whether or not she performed any services upon its behalf. Performance of this undertaking was secured by an assignment by the "vendees" of their entire right, title, and interest in the stock and by their endorsement and delivery of the

stock certificates to the "vendors" and the latter's retention of all voting rights. The contract further provided that "all of the provisions of this contract are to be and always construed to be conditions precedent to the right and title of Vendees in and to the stock of said Company as aforesaid and neither the Vendees or any of them, or their respective heirs, executors, administrators or assigns, shall ever have or claim any right, title or interest in and to said stock except upon full and complete performance of every condition and covenant of this contract and the satisfaction in full of the salaries herein provided for * * * and * * * upon the faithful compliance of all of said conditions and covenants punctually made, then and in that event only, the title to said stock in the Vendees respectively as aforesaid then to become absolute * * *." (47 B. T. A., at pp. 810, 811.)

Petitioners further point out that in the *Holland* case decedent was not active in the affairs of the corporation either before or after her husband's death in 1928, and the $25,000 "salary" represented a return of approximately 20 percent of the value of the company's capital and surplus at the time of the transfer. The Board found that at such time it would have been unreasonable to expect that the return from the stock during decedent's lifetime would exceed an average of $25,000 per year. It was also found that, after adding the amounts paid decedent to the corporation's profit and loss figures, its total actual earnings for the five years preceding decedent's death averaged but $7,000 per year. Under the foregoing circumstances, it was held that "An analysis of the contract by which decedent 'sold' this stock to her children creates grave doubt whether it was of any real effect in advance of decedent's death," and the Board rejected the petitioner's contention that it should "disregard the plain language of the contract and the obvious intention of the participants on the ground that they purported to accomplish a postponed transfer which the law of Texas forbids, and hence that the Federal estate tax which would apply if the contract meant what it says is frustrated by local law." It was further held that, "viewing the transaction in its essential reality, the income to be expected from the stock was in effect retained by decedent during her life," and that "this withholding of the income until decedent's death, coupled with the retention of the certificates under the pledge and the reservation of the right to vote the stock and to designate the company officers" was sufficient to show that the transfer was intended to take effect in possession or enjoyment at or after decedent's death.

Petitioners, in their motion for reconsideration, then go on to point out in detail wherein the salary contract which decedent had with the Hofford Co. was different from the salary contract which was present in the *Holland* case. The substance of petitioners' contention

in this respect is as follows: In the present case decedent managed the business of the Hofford Co. from the time of its organization by him in 1909 until his death. His contract of employment dated December 28, 1937, provided for a salary of $15,000 per annum, payable in equal monthly installments during the continuance of the agreement, regardless of whether or not he should at any time or times be incapacitated by illness or otherwise from performing his duties as manager of the company. While decedent reserved the right to terminate the contract upon three months' notice, such termination would likewise terminate his salary, which was payable only during the continuance of the agreement. When the contract of employment was executed, decedent was in very good health. He desired and expected to, and actually did, continue managing the Hofford Co. until his death.

Petitioners emphasize that the annual salary of $15,000 provided for by the agreement was the salary which decedent had previously drawn from the Hofford Co. and reported in his income tax returns for the years 1936 and 1937 and that the Commissioner has made no contention that such salary was unreasonable. It was intended to and did represent reasonable compensation for services actually performed, while providing an adequate livelihood in the nature of a pension in the event that he should become incapacitated by illness or otherwise for further active service. Petitioners argue further that the salary of $15,000 per annum which Hofford was to receive under the contract was not designed to absorb the earnings of the company, but was a bona fide salary contract as such. As evidence of this fact, they point out that the actual net income of the Hofford Co. for the years 1938 and 1939, after proper adjustment for the decedent's overdrafts, which were subsequently repaid by his executors to the company, was $27,385.02 and $14,379.73, respectively. There was a loss of $13,626.13 in 1940, the year of decedent's death.

Petitioners further argue in support of their motion for reconsideration that in the present case the stock in controversy was not pledged to or retained by decedent as security for any payments to be made to him, no voting rights were reserved by him, and fulfillment of the salary agreement was not made a condition precedent to the passing of any right and title to the stock as in the *Holland* case. On the contrary, the stock in controversy was irrevocably assigned to the decedent and Smith and the Markle Banking & Trust Co., as trustees, for the purposes designated in the trust agreements and the sole benefit of the beneficiaries named therein. The certificates representing such stock were delivered to and held by the trust company, all voting rights rested with the trustees, and no beneficial interest in or enjoyment of the stock was retained by decedent. While each trust agree-

ment provided that "no stock of W. F. Hofford, Inc. shall be sold or otherwise disposed of during the lifetime of Settlor without his written consent, and provided further that subsequent to the death of Settlor and during the lifetime of Donald V. Smith no stock of said Company shall be sold or otherwise disposed of without the written consent of the said Smith," this provision did not represent the reservation of any interest in the stock for the benefit of either Hofford or Smith, but merely a discretion to be exercised by them, in turn, in good faith and solely for the benefit of the beneficiaries named in the trusts, by the persons considered by decedent as best qualified to determine the advisability of any sale of the stock in question. In so far as the payment of decedent's salary was concerned, his contract of employment was with the Hofford Co. and was equally enforceable regardless of the ownership of its stock.

For the reasons which we have endeavored to summarize above, petitioners pray that we reconsider our opinion promulgated January 8, 1945, 4 T. C. 542, *supra*, and reverse our holding therein that the value of the property transferred by the decedent to the six trusts in question was includible in decedent's gross estate under section 811 (c) of the Internal Revenue Code, following *Estate of Pamelia D. Holland*, *supra*. We think this motion should be granted.

Upon a reexamination of the facts in the instant case and a reexamination of the *Holland* case, we have concluded that the facts in the *Holland* case are so different from those present in the instant case that the *Holland* case is not controlling. We have concluded that the employment contract which decedent entered into with the Hofford Co. at the time he created the trusts in question and transferred to them 1,200 shares of his stock in the Hofford Co. (800 more shares were subsequently transferred to the trusts January 8, 1938) was not a retention by decedent "for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from the property" as those terms are used in section 811 (c) of the code. See *George C. Doerschuck et al., Executors*, 17 B. T. A. 1123. We think we erred in so holding in our opinion promulgated January 8, 1945, and our report is hereby modified accordingly. The effect of this modification is to hold that the value of the property transferred to the six trusts by decedent is not includible in his gross estate under the provisions of section 811 (c), as respondent contends.

Petitioners in their motion for reconsideration ask that we find certain additional facts. Some of the additional facts which petitioners ask us to find we regard as immaterial. We, however, grant petitioners' motion for reconsideration in that respect, to the extent

that we make the following additional findings of fact: The taxable income originally reported by the Hofford Co. for the years 1938 and 1939 made no adjustment for decedent's salary overdrafts in the amounts of $7,537.50 and $8,200, respectively, its actual net income for said years being $27,385.02 and $14,374.73, respectively. When decedent's salary overdrafts were discovered after his death, amended tax returns were filed upon behalf of the Hofford Co. for the years 1938 and 1939 upon the basis of the salary specified in his contract of employment. The salary of $15,000 per year provided for by the decedent's contract of employment was the same salary which decedent had previously drawn from the Hofford Co. in 1936 and 1937.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

Murdock, *J.*, dissenting: I believe this case was correctly decided in the original opinion.