ESTATE OF FRANCIS NED SCOFIELD, Deceased, GRANVILLE O. SCOFIELD, Executor, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Scofield v. Commissioner
Docket No. 9606-77.
United States Tax Court
T.C. Memo 1980-470; 1980 Tax Ct. Memo LEXIS 119; 41 T.C.M. (CCH) 227; T.C.M. (RIA) 80470; October 21, 1980, Filed *119 Decedent executed a will leaving substantially all his estate to his son and naming his son as executor. Subsequently, he guaranteed bank loans made to his son and pledged securities as collateral for the loans. The bank filed no claim against the estate during its probate, but the securities were distributed to the son subject to the security interest of the bank. Held: (1) Under California law, the bank's claim on the guaranty was not extinguished by failure to file a claim against the estate since the claim was secured; (2) under sec. 2053, I.R.C. 1954, the estate is entitled to a deduction for the bank's lien, but the amount of the deduction must be reduced by the value of the right of subrogation against the son; and (3) the value of such right determined. Richard L. Carico, for the petitioner. Milton B. Blouke, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $54,056.00 in the Federal estate tax of the Estate of Francis Ned Scofield. The only issue to be decided is whether the estate is entitled to any deduction under section 2053 of the Internal Revenue Code of 1954[1] for a lien upon assets *120 of the estate, which resulted from the decedent's guaranty of bank loans made to his son. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Francis Ned Scofield (the decedent) died testate a resident of California on November 14, 1973. Granville O. Scofield (Mr. Scofield) was executor of the estate of the decedent and resided in Santa Cruz, Calif., when the petition in this case was filed. A Federal estate tax return was filed for the estate with the Internal Revenue Service Center, Fresno, Calif.
The decedent was the father of Mr. Scofield. On July 8, 1968, the decedent executed a will in which he bequeathed his stock in the Southern Pacific Railway Co. (Southern Pacific stock) to his granddaughter and all the remainder of his estate to Mr. Scofield. During 1968, the decedent also made gifts to Mr. Scofield of securities having a value of $59,098. Sometime prior to 1970, Mr. Scofield received loans from the County Bank of Santa Cruz (the bank) totaling approximately $30,000. On March 23, 1970, the decedent *121 executed and gave to the bank a guaranty, which in part provided: This is a continuing guaranty relating to any indebtedness [of Mr. Scofield], including that arising under successive transactions which shall either continue the indebtedness or from time to time renew it after it has been satisfied. This guaranty shall not apply to any indebtedness created after actual receipt by Bank of written notice of its revocation as to future transactions. * * * In conjunction with the guaranty, the decedent pledged securities to the bank as collateral. Initially, the decedent's liability on the guaranty was limited to $32,074. On January 11, 1971, he agreed to raise the limit to $50,000, and later, he agreed to raise the limit to at least $193,674. The decedent received no consideration in money or money's worth for the guaranty. After the decedent executed the guaranty, the bank periodically renewed the loans that it had made to Mr. Scofield. In addition, the bank loaned Mr. Scofield additional amounts and renewed such loans periodically. Mr. Scofield used a large part of the borrowed funds to purchase stock, and between early 1968 and his father's death, Mr. Scofield incurred realized *122 and unrealized losses of approximately $79,000 in his investments in stock. Mr. Scofield also used some of the borrowed funds for personal expenses. When his father died, Mr. Scofield's debt to the bank was $193,674. Such debt was fully collateralized by securities of the decedent. The debt was comprised of four separate loans, and during the administration of the estate, each loan was renewed as follows: Interest Rate
Principal
Renewal Date
Pre-Renewal
Post-Renewal
$156,674
6/1/74
9-1/4
11-1/4
20,000
2/12/74
9-1/4
9-3/4
7/29/74
9-3/4
11-3/4
10,000
1/14/74
7-1/2
9-3/4
7,000
1/17/74
8-3/4
9-3/4
7/13/74
9-3/4
11-3/4 The decedent's will was admitted to probate by the Superior Court of the State of California, County of Santa Cruz, on November 30, 1973. At that time, the Southern Pacific stock was included in the collateral held by the bank. To secure release of such stock, Mr. Scofield, as executor of the estate, entered into an agreement with the bank, whereby he transferred all the other securities of the decedent to the bank and agreed to reduce the total indebtedness by $10,000. Such reduction was accomplished by the estate paying $2,500 and by Mr. Scofield paying the remaining $7,500 to the bank. On *123 September 6, 1974, the Superior Court entered an order distributing the decedent's property in accordance with the will. The bank had not filed a claim in probate; nevertheless, the securities which the bank held were distributed to Mr. Scofield "subject to the security interest" of the bank. In October or November 1974, title to the securities was transferred to Mr. Scofield's name, but the bank retained possession of most of them. In 1975 and 1976, Mr. Scofield repaid all his loans. As executor of the estate, Mr. Scofield elected to value the decedent's gross estate for Federal estate tax purposes as of May 14, 1974, the alternate date provided by section 2032. Ignoring the bank's lien and any Federal estate taxes that may be owed by the estate, the value of the distribution to Mr. Scofield on the alternate valuation date was $307,404 and on the date of distribution was $258,624. Mr. Scofield's net worth, excluding his liability to the bank and his distribution from the estate, was $91,100 on the date of the decedent's death, $83,100 on the alternate valuation date, and $46,500 on the date of distribution. His net worth also included a fee of $7,674.91 from the estate for *124 serving as executor. The decline in Mr. Scofield's net worth after the date of the decedent's death was attributable in part to a decline in the value of his stock and in part to sales of some of such stock without retaining or reinvesting the proceeds thereof. On the Federal estate tax return, Mr. Scofield deducted $193,674 because of the bank's lien. In his notice of deficiency, the Commissioner disallowed the deduction. OPINION The sole issue to be decided is whether the estate is entitled to any deduction as a result of the bank's lien, but to decide that issue, we must first resolve a number of subsidiary questions. In part, section 2053(a) provides: (a) General Rule.--For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts-- (4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate, as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered. *125 To support the disallowance of the deduction claimed by the estate, the Commissioner has advanced a variety of arguments, and his positions appear to have shifted with time and the events. At the outset, it is helpful to point out several matters which are not in dispute. First, the Commissioner recognizes that at the time of the decedent's death, the bank's lien was a mortgage or indebtedness on property which was includable in the estate. Second, the deduction is not to be disallowed because Mr. Scofield was the principal obligor and the decedent's liability was secondary or contingent, for section 20.2053-7, Estate Tax Regs., [2] acknowledges that a lien on which the estate is only secondarily liable is to be taken into consideration in computing the taxable estate. Third, the Commissioner does not argue that the deduction is barred by the fact that the encumbered property was bequeathed to the principal obligor, Mr. Scofield, who could use the property to repay the loans. Finally, the Commissioner does not contend that the eventual repayment of the loans by Mr. Scofield in 1975 and 1976 bars the deduction. Neither section 2053(a) nor the regulations thereunder disallow the *126 dedction when the encumbered property is eventually used to satisfy the indebtedness. Throughout these proceedings, the Commissioner has contended that the deduction was not allowable since the bank never filed a claim against the estate in probate. He *127 relies on section 707, Cal. Prob. Code (West Supp. 1980), which provides that "all claims [against a decedent] arising upon contract, whether they are due, not due, or contingent," must be timely filed with the executor after the publication of notice to creditors, or else be "barred forever." The petitioner concedes that the bank never filed a claim against the estate; accordingly, the Commissioner concludes that the liability of the estate to the bank was extinguished during its administration and that, therefore, no deduction was permissible. See Estate of Hagmann v. Commissioner,60 T.C. 465 (1973), affd. per curiam 492 F. 2d 796 (5th Cir. 1974). Section 716, Cal. Prob. Code (West 1956), provides the following special rule for secured claims: No holder of a claim against an estate shall maintain an action thereon, unless the claim is first filed with the clerk or presented to the executor or administrator, except in the following case: An action may be brought by the holder of a mortgage or lien to enforce the same against the property of the estate subject thereto, where all recourse against any other property of the estate is expressly waived in the complaint. * * * In Corporation of America v. Marks,10 Cal. 2d 218, 73 P. 2d 1215 (1937), *128 the California Supreme Court faced the issue of whether a judgment lien against property of an estate was enforceable after distribution of the estate. The court observed that "The rule as to mortgage liens is well settled. An action to foreclose a mortgage, waiving recourse against other property, may be brought during the course of administration proceedings or after the estate has been distributed." The court held that judgment liens were entitled to the same treatment: "We can perceive no reason why the Legislature should wish to single out judgment liens for separate, less favorable treatment." 73 P. 2d at 1217. In this case, we also see no reason why the lien created by a pledge should not be accorded the same treatment as mortgage liens and judgment liens under section 716. In fact, in In re Estate of Kibbe,57 Cal. 407 (1881), the California Supreme Court considered a provision of an earlier code, substantially the same as section 716, and ruled precisely that a pledgee was not obliged to present a claim against an estate to keep his lien on estate assets effective after settlement of the estate. Therefore, we conclude that in this case, the bank's lien against the assets *129 of the estate was not extinguished because of the failure to file a claim in probate. In his brief, the Commissioner contends, for the first time, that the entire lien of the bank was extinguished by the renewal of the loans and by the increase in the interest rates. The petitioner argues that such contention should not be considered because it was raised too late and because the untimely raising of the issue prevented it from offering evidence which otherwise would have been presented. In the alternative, the petitioner maintains that under California law, the renewal of the loans did not result in extinguishing them in view of the circumstances surrounding their renewal. Section 2819, Cal. Civ. Code (West 1974), provides: A surety is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended. [3]
It has been held in California *130 that an "increase in the rate of interest on an obligation constitutes an alteration within the meaning of this provision." Southern California First National Bank v. Olsen,41 Cal. App. 3d 234, 116 Cal. Rptr. 4, 8 (2d Dist. Ct. App. 1974); Nissen v. Ehrenpfort,42 Cal. App. 593, 183 P. 956 (1st Dist. Ct. App. 1919). In addition, in California, a continuing guaranty is revoked by the death of the guarantor ( Valentine v. Dononhoe-Kelly Banking Co.,133 Cal. 191, 65 P. 381 (1901)), and the guarantor has no liability for advances or renewals made after revocation ( Southern California First National Bank V. Olsen,supra). Despite section 2819 and the precedents thereunder, there is a substantial doubt as to whether the renewal of the loans extinguished the bank's lien under California law. Mr. Scofield was not only the principal obligor, but also the executor of the estate. Thus, when the bank renewed his loans and raised the interest rates subsequent to the decedent's death, he of course was aware of those facts as the executor of the estate. In Walter Broderick & Associates, Inc. v. Monte Vista Lodge,253 Cal. App. 2d 242, 61 Cal. Rptr. 679 (4th Dist. Ct. App. 1967), there was an *131 alteration in a contract guaranteed by the defendants. The defendants claimed to be exonerated from liability because of the alteration, but because they had known of the change then it was made, the court held "it was * * * their responsibility to notify plaintiff of their claim of exoneration or be estopped to deny their liability." 61 Cal. Rptr. at 682. Similarly, in the case at bar, Mr. Scofield accepted the renewal of his loans and the higher interest rates and registered no objection on behalf of the estate. Under such circumstances, it is likely that he would be estopped to deny the estate's liability on the loans. Moreover, under California law, the extinguishment of the estate's liability would have occurred only if the estate had not consented to the renewal of the loans and to the increase in interest rates. Southern California First National Bank v. Olsen, supra;Newhouse v. Getz,8 Cal. App. 2d 113, 47 P. 2d 306 (1st Dist. Ct. App. 1935); Michelin Tire Co. v. Bentel,184 Cal. 315, 193 P. 770 (1920). Here, we have no specific evidence that the estate gave its consent, but it is difficult to believe that the bank would have renewed the loans without an assurance that *132 the loans would remain secured. It is well settled that issues raised for the first time on brief will not be considered when to do so prevents the opposing party from presenting evidence that he might have if the issue had been timely raised. Estate of Horvath v. commissioner,59 T.C. 551, 555 (1973); Theatre Concessions, Inc. v. Commissioner,29 T.C. 754, 760-761 (1958). Had the issue been raised at or before the trial, the petitioner might have been able to offer evidence regarding an estoppel or evidence showing consent on behalf of the estate. Hence, it is clear that the estate would be prejudiced if we were to consider the issue at this time, and consequently, we decline to do so. We deal next with the Commissioner's contention that the decedent's guaranty and pledge were "in the nature of gifts or testamentary dispositions" to the extent they secured loans used by Mr. Scofield for personal living expenses. The argument derives from the cases construing section 2053 (c), which provides in part: The deduction allowed by this section in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded on a promise or agreement, be limited to *133 the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth * * * In construing this provision, [4] *134 this and other courts have consistently held that the consideration in money or money's worth need not pass to the decedent. Commissioner v. Porter,92 F. 2d 426 (2d Cir. 1937), affg. 34 B.T.A.. 798 (1936); Carney v. Benz,90 F. 2d 747 (1st Cir. 1937); Commissioner v. Bryn Mawr Trust Co.,87 F. 2d 607 (3d Cir. 1936), affg. a Memorandum Opinion of this Court; Commissioner v. Kelly's Estate,84 F. 2d 958 (7th Cir. 1936), affg. 31 B.T.A. 941 (1934), cert. denied 299 U.S. 603 (1936); Estate of Borland v. Commissioner,38 B.T.A. 598 (1938); Estate of Wade v. Commissioner,21 B.T.A. 339 (1930). A guarantor's obligation has been held to have been contracted for adequate and full consideration in money or money's worth when there has been a loan of money to a third party as a result of the guaranty and the guaranty thereby became binding. Estate of Hofford v. Commissioner,4 T.C. 542 (1945), supp. opinion 4 T.C. 790 (1945); Commissioner v. Porter,supra;Carney v. Benz,supra;Estate of Borland v. Commissioner,supra.[5] In view of such decisions, it is clear that the estate is not to be denied the deduction merely because the decedent received no consideration in money or money's worth for the guaranty.However, *135 the Commissioner relies on dicta in some of such cases and argues that, in part, the deduction should be disallowed because the guaranty arrangement was used by the decedent as a means of making testamentary gifts to Mr. Scofield. The petitioner responds that by this argument, the Commissioner is seeking, indirectly, to challenge the holding that the deduction is not to be disallowed merely because the decedent received no consideration in money or money's worth for the guaranty. In Estate of Hofford v. Commissioner,supra, the decedent endorsed a note of a homeowners association, but received no consideration in money or money's worth for his endorsement. The homeowners association obtained a loan as a result of the endorsement, but later it became insolvent and unable to repay the loan. After the decedent died, his estate was required, to pay, and we held that the payment was deductible. However, we specifically stated "there is no evidence that the decedent intended any gift to the association by his accommodation endorsement and there is no reason to suppose that he intended any gift." 4 T.C. at 558. In Carney v. Benz,supra, the decedent guaranteed a stock-trading account of *136 a corporation owned by his wife and daughter but received no consideration in money or money's worth for his guaranty. After his death, a claim was made against his estate under the guaranty, and the estate paid the claim. The First Circuit allowed a deduction for the payment, but the court sharply circumscribed its holding: In the present case the guaranty which the decedent gave * * * was a purely commercial undertaking. * * * It does not appear that Benz expected to loss by giving the guaranty * * * [90 F. 2d at 749.] The court made it clear that "colorable family contracts and similar undertakings made as a cloak to cover gifts" do not give rise to deductions. 90 F. 2d at 749. In Commissioner v. Porter,supra, the issue was whether the liability of the decedent's estate on the decedent's guaranty of bank loans to his son-in-law was deductible by the estate. As in Estate of Hofford and Carney v. Benz, the decedent had received no consideration in money or money's worth for the guaranty. The Second Circuit affirmed a decision of this Court for the estate, but it cautioned that: the stipulation does not say that, when the guaranty was given, the son-in-law was insolvent or that *137 the guarantor had no reasonable expectation of reimbursement [from the son-in-law] if he should be called upon to pay. So far as appears, it was an ordinary business transaction by which an accommodation guarantor, if required to pay, would acquire rights equal in value to the obligations he had assumed. [92 F. 2d at 428.] If the guarantor had not possessed a right of subrogation or had not had a reasonable expectation of reimbursement, the court concluded, "the guaranty would be in substance a gift." 92 F. 2d at 428. The Commissioner failed to refer to any cases in which such dicta was applied, but our independent research reveals one such case.In Estate of Jermyn v. Commissioner, a Memorandum Opinion of this Court dated April 2, 1940, the decedent endorsed notes of his son at a time when his son was insolvent, and the decedent received no consideration in money or money's worth for his endorsement. After the decedent's death, his estate was required to pay the notes. We upheld the Commissioner's disallowance of a deduction for the payment and ruled as follows: It is true, as petitioner contends, that consideration within the intendment of the statute here involved [the predecessor *138 of sec. 2053] may be a benefit to promisor or a detriment to promisee and therefore that the son need not have passed consideration to the decedent. Commissioner v. Porter,92 F. 2d 426. Nevertheless, we think, under the authority of the same decision, that the petitioner has not adduced the evidence requisite to the allowance of the deduction claimed. * * * The record before us indicates that at the time of the death of Edmund B. Jermyn, Jr. [the son] more than two years prior to the death of the decedent, and for a long time prior thereto, the son was hopelessly insolvent, and any reasonable consideration of the relations between father and son leads to the conclusion that the father must have known the son's financial condition. * * * it is apparent that the petitioner has not shown that the father had any "reasonable expectation of reimbursement if he should be called upon to pay * * *." We therefore conclude and hold that no error has been shown in the action of the Commissioner in denying the deduction claimed by the petitioner.
Since the Commissioner did not assert this position until the time of the trial, he has the burden of proof with respect to it. Rule 142(a), Tax Court Rules of Practice and Procedure. *139 In support of his position, the Commissioner relies on the facts that the decedent made a gift to Mr. Scofield in 1968, that in that year, the decedent also executed his will in which he bequeathed substantially all of his estate to Mr. Scofield, that Mr. Scofield admitted that his income was negligible in the years 1968 through 1973, that Mr. Scofield used some of the funds borrowed from the bank to cover his personal expenses, and that Mr. Scofield sustained substantial losses in his stock transactions during those years. In addition, the Commissioner asserts that the decedent knew that Mr. Scofield needed some of the borrowed funds for his personal expenses and that the decedent reasonably knew that he would be called upon to pay off the loans to Mr. Scofield. However, the record contains not one iota of evidence indicating that the decedent was aware of the facts that Mr. Scofield needed to use some of the borrowed funds for his personal expenses and that Mr. Scofield was sustaining losses on his stock transactions. Although Mr. Scofield testified in this case, he was never asked any questions concerning whether he revealed his need for funds and his financial condition to *140 the decedent. In this case, as in the Hofford,Carney, and Porter cases, the arrangements between the decedent and the lender took the form of a commercial transaction. In Hofford,Carney, and Porter, the courts recognized that they were dealing with what appeared to be a business transaction, and in their dicta, they made clear that they would look behind the form of the transaction only when there was evidence indicating that the arrangement was being used for the purpose of making gifts. Since the Commissioner has the burden of proof on this issue in this case, he has the burden of proving that in entering into the guaranty arrangement, the decedent intended to make gifts to Mr. Scofield, and the evidence is clearly insufficient to carry that burden. For all that we know, the decedent may have been wholly unaware of the fact that Mr. Scofield was using some of the borrowed funds for personal expenses or that Mr. Scofield was sustaining substantial losses; Mr. Scofield may have, deliberately or otherwise, withheld such information from the decedent. Moreover, even if the decedent was aware of such circumstances, both he and Mr. Scofield may have been eternally optimistic, hoping *141 that Mr. Scofield's investments would, in time, prove far more successful. Without evidence showing that the decedent was aware of Mr. Scofield's need for money, we cannot infer that the decedent intended to make gifts by his continuing to guarantee the loans to Mr. Scofield. Inasmuch as the Commissioner has failed to prove that gifts were intended, he has failed to bring his case within the dicta of Hofford,Carney, and Porter.[6] Consequently, we need not, and do not, decide whether to adopt such dicta in this case. So far, we have concluded that the entire lien of the bank is to be considered in computing the deduction allowed the estate; now we turn to the questions concerning the right of subrogation. On brief, the petitioner makes two concessions which reduce the allowable deduction: first, that because $10,000 was paid to the bank during the administration of the estate, the maximum deduction is $183,674 *142 [7]; and second, that the deduction is to be reduced by the value of the estate's right of subrogation against Mr. Scofield. The parties agree that to determine the value of such right, it is necessary to ascertain Mr. Scofield's net worth and the net value of his distribution from the estate.The parties disagree over the date for determining such values. The petitioner contends that such values should be ascertained as of the date of the distribution of the assets of the estate; whereas, the Commissioner argues that the right of subrogation was an asset of the estate and should be valued as of the alternate valuation date. Generally, an estate is to be value entirely as of either the date of death or the alternate valuation date. Sec. 20.2032-1(d), Estate Tax Regs.; Ithaca Trust Co. v. United States,279 U.S. 151, 155 (1929). However, in the valuation of claims against, and indebtedness of, estates, events affecting the value and occurring subsequent to the date of death or to the alternate valuation date may be taken into consideration. Estate of Hagmann v. Commissioner,60 T.C. 465 (1973), affd. *143 per curiam 492 F. 2d 796 (5th Cir. 1974); Estate of Shedd v. Commissioner,37 T.C. 394 (1961). In Eckhart v. Commissioner,33 B.T.A. 426 (1935), the decedent had endorsed two promissory notes which were payable on demand. At the date of his death, a balance of approximately $148,000 was due on the notes, and they were secured by collateral of the maker having a value of $65,000. After the decedent's death, the holder of the notes made an unsuccessful demand on the maker for payment, filed a claim against the decedent's estate which was allowed, and sold the collateral for approximately $19,000. The proceeds of the collateral were applied to the notes, and the estate paid the difference and claimed a deduction therefor.This Court rejected the Commissioner's position that the deduction should be limited to the difference between the debt and the value of the collateral at the date of death and allowed the entire deduction. 33 B.T.A. at 440-441. We recognized the general rule for valuing the estate, but we pointed out that the amount of certain claims and losses depends upon events occurring subsequent to the valuation date. The estate was actually required to pay the entire difference *144 between the amount of the debt and the proceeds from the sale of the collateral, and the Court held that such amount should be deductible. The right of subrogation in this case is like the collateral in Eckhart: such right is not an asset of the estate which should be valued on the valuation date; rather, it represents an amount to be applied in reduction of the bank's lien in determining the amount of the allowable deduction. As in Eckhart, we believe that the amount of the deduction to be allowed in this case should not be based simply on the circumstances existing at the valuation date but should take into consideration all the events occurring during the administration of the estate. The Commissioner recognized that the amount of the lien is to be reduced by the payments made during the administration of the estate. Similarly, the reduction resulting from the existence of the right of subrogation should not be computed until the administration of the estate was completed and the collateral was distributed to Mr. Scofield, subject to the lien. Accordingly, we hold that the value of the right of subrogation should be determined as of the date of the distribution of the assets *145 of the estate. For such purpose, the net value of Mr. Scofield's distribution is determined as of that date, and his net worth is determined as of that date. The Commissioner made an additional argument for increasing the net worth of Mr. Scofield to be taken into consideration for purposes of such computation. The Commissioner argued that since Mr. Scofield sold some of his stock after the death of the decedent and used some of the proceeds of such sales for personal expenses, his net worth at the time of the distribution of the estate should be increased by the gains on the sales made by him in 1975 and 1976. In explanation of his argument, the Commissioner asserted that unless such an adjustment is made, the effect will be to allow the estate a deduction for the proceeds of the sales used for his personal expenses.
There is absolutely no rational basis for increasing Mr. Scofield's net worth by the gains which he realized on sales in 1975 and 1976. There might be some merit to an argument for increasing his net worth by some part of the proceeds of sales made during the administration of the estate, but if that argument were considered, we would need to decide whether the increase *146 is to be based on the excess of the proceeds of sales over the proceeds reinvested or on the gains from sales made during such period or whether any adjustment should be made to reflect the taxes due on any such sales. The Commissioner's statement of his argument completely misled the petitioner and failed to focus on the questions that would have to be considered and decided by the Court. Hence, we conclude that the issue is not properly before us, and we will make no adjustment as a result of such argument.
Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue, unless otherwise indicated.↩
2. Sec. 20.2053-7 Deduction for Unpaid Mortgages. A deduction is allowed from a decedent's gross estate of the full unpaid amount of a mortgage upon, or of any other indebtedness in respect of, any property of the gross estate, including interest which had accrued thereon to the date of death, provided the value of the property, undiminished by the amount of the mortgage or indebtedness, is included in the value of the gross estate. If the decedent's estate is liable for the amount of the mortgage or indebtedness, the full value of the property subject to the mortgage or indebtedness must be included as part of the value of the gross estate; the amount of the mortgage or indebtedness being in such case allowed as a deduction. But if the decedent's estate is not so liable, only the value of the equity redemption (or the value of the property, less the mortgage or indebtedness) need be returned as part of the value of the gross estate.↩
3. Under sec. 2787, Cal. Civ. Code↩ (West 1974), there is no distinction between "surety" and "guarantor."
4. The requirement of an "adequate and full consideration in money or money's worth" came into law in 1926 as sec. 303 (a) (1) of the Rev. Act of 1926, ch. 27, 44 Stat. 72.
5. In Latty v. Commissioner,62 F. 2d 952, 954 (1933), dismissing petn. to rev. 23 B.T.A. 1250 (1931), the Sixth Circuit, in dicta, expressed some doubt about such holdings by saying: "we think that ordinarily these words [the consideration requirement of sec. 2053(c)↩] must be construed to evidence an intent upon the part of Congress to permit the deduction of claims only to the extent that such claims were contracted for a consideration which at the time either augmented the estate of the decedent, granted him some right or privilege he did not possess before, or operated to discharge a then existing claim, as for breach of contract or personal injury." However, our research has revealed no recent decisions on the issue, and the Commissioner has not asked us to reconsider such holdings. Under the circumstances, we decline to do so on our own initiative.
6. It should be recognized that in the Jermyn↩ case, the petitioner had the burden of proving that the decedent did not intend to make gifts. Whether we would reach the same result on the record in this case if the burden was on the petitioner is a matter not to be considered.
7. The parties agree that the $2,500 payment made by the estate is deductible by it.↩